IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 10, 2004

## STATE OF TENNESSEE v. ARTHUR SOUTHERN

**Direct Appeal from the Circuit Court for Franklin County**
**Nos. 14,219 & 14,663   Thomas W. Graham, Judge**

---

**No. M2003-02150-CCA-R3-CD - Filed November 22, 2004**

---

The Defendant, Arthur Southern, pled guilty to two counts of sale of a schedule II controlled substance.  The trial court sentenced the Defendant to four years and three months on each count and ordered that the sentences run consecutively, for an effective sentence of eighty years and six months.  The Defendant filed a motion to withdraw his guilty plea, which the trial court denied.  The Defendant then filed a motion for a new sentencing hearing or a sentence reduction, which the trial court denied.  On appeal the Defendant contends that the trial court erred when it: (1) denied his motion to withdraw his guilty plea; and (2) ordered that his sentences run consecutively.  Finding no reversible error, we affirm the judgments of the court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES, and NORMA MCGEE OGLE, JJ., joined.

Timothy S. Priest (on appeal), Winchester, Tennessee, and David McGovern (at hearing), Jasper, Tennessee, for the appellant.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; James Michael Taylor, District Attorney General; William Copeland, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I.  Facts

This case arises from the Defendant's convictions for two counts of sale of a schedule II controlled substance, less than .5 grams, which is a class C felony.  On November 6, 2001, the Defendant was indicted on four counts of sale or delivery of cocaine occurring on May 29, 2001, two counts occurring on May 30, 2001, and two counts occurring on June 10, 2001.  On July 2, 2002, the Defendant was indicted on two counts of sale or delivery of cocaine occurring on October 27, 2001.

The trial court held a guilty plea hearing on both cases, at which the following occurred. The State informed the trial court that the Defendant would be pleading guilty to two counts of sale of a schedule II controlled substance as a Range I offender. The trial court asked the Defendant, "Is what you understood you were going to plead to two separate C felonies, which carry with them sentences of between three and six years . . . is that what you understood?" The Defendant responded "Yes, sir." An off the record discussion between the Defendant and his counsel then occurred, after which the trial court explained the Defendant's possible sentence, stating:

> [DEFENDANT'S COUNSEL]: The judge would make that decision —
> THE COURT: (Interposing) If they're entirely separate events you know I'd have to make that decision and probably if they're entirely separate events we would not run them concurrent. But the issue is – first of all, would be whether you're guilty of the crimes and then how you would serve the sentence, whether there would be probation immediately. If you've got a record . . . it's not likely you'll would get immediate probation, so you would end up serving some time and . . . [c]hances are . . . it would be run consecutive because they are separated in time by . . . four months . . is that what you understood now?
> [The Defendant]: Right.
> THE COURT: Okay. All right, [Defendant's counsel] have you been over with the Defendant the nature of the charges and the Range of punishment on these two cases?
> [DEFENDANT'S COUNSEL]: Yes, sir, I have.

The trial court explained the Defendant's rights to the Defendant and asked the Defendant if he was choosing to waive those rights, and the Defendant affirmatively acknowledged that he was waiving his rights. The trial court informed the Defendant that the Defendant had previous convictions that were "going to be looked at when it [came] time for sentencing." The Defendant acknowledged that he understood. The court informed the Defendant that his sentence would be decided by the court and that, if the Defendant's plea was accepted, the State agreed to drop the other eight charges against him. Again, the Defendant indicated that he understood. The Defendant asserted to the court that he believed that entering this guilty plea was in his best interest. The Defendant informed the court that his plea was not the result of any force, pressure, or intimidation.

The State summarized the facts that it would have proven at trial for the two counts to which the Defendant was pleading guilty, stating:

> [H]ad . . . this case continued to trial we would have called Sergeant Mike Buckner several other investigators with the Decherd Police Department, plus an undercover operative, and two TBI crime lab chemists, David Brown and Adam Gray. The proof would show that on the date in the indictment in this case, May 29th, in the early evening hours, an undercover operative approached the [D]efendant on Wilkerson Street. The [D]efendant came out and the undercover operative requested a 50, the [D]efendant then provided an off white rock substance, which turned out to be of

crack cocaine, and sold it to him for $50.00.

> [I]n case number 14663, October 27th, 2001, was the date of this event. If this case had gone to trial we would have called Herb Glassmeyer, Danny Mantooth, certain other Winchester Police Department officers, also Brent Trotter of the TBI Crime lab and two undercover operatives. The proof would show on that date . . . at a place called the Honey Hole, which is actually on Wilkerson Street in Decherd, Tennessee, the [D]efendant sold an undercover operative a $20.00 rock of cocaine. And that substance was confirmed to be crack by the lab.

After this summarization of facts, the following occurred:

> THE COURT: All right, [Defendant], did you hear what [the State] said?
> [THE DEFENDANT]: Yes, sir.
> THE COURT: Did those two buys happen as he said they happened?
> [THE DEFENDANT]: Not necessarily.
> THE COURT: Well you have to – I mean I'm not going to find you guilty if there's no facts to support it, so the only basis for the facts is that you agree . . . that they would be able to put on proof to that effect.
> [THE DEFENDANT'S COUNSEL]: Can I talk to . . . .
> (off the record discussion between [the Defendant] and [the Defendant's counsel].)
> [THE DEFENDANT'S COUNSEL]: Judge, he and you can inquire of him about this, he indicates that he understands the State could put on proof to that effect, which would be, I think is the standard. We're confident that Henry Parrish would testify to that and that —
> THE COURT: (Interposing) That he believes it's in his best interest to offer this plea?
> [THE DEFENDANT'S COUNSEL]: Yes, sir.
> THE COURT: Based on what you think the State would put on, is that right?
> [THE DEFENDANT]: Yes, sir.
> THE COURT: Okay. So this is a best interest plea I guess you're saying?
> [THE DEFENDANT'S COUNSEL]: Judge, I wasn't aware of that until this moment, but apparently so.
> THE COURT: All right. Well, [Defendant], do you still wish to offer pleas of guilty in these two cases one involving the alleged sale on May the 29th, 2001, and the other one on October 27th, 2001.
> [THE DEFENDANT]: Yes, Sir.

The trial court accepted the Defendant's guilty plea, and, subsequently, it held a sentencing hearing at which it admitted into evidence the Defendant's presentence report, which showed that the Defendant had two previous felony convictions for sale of a schedule II controlled substance and multiple misdemeanor convictions. The Defendant's counsel informed the trial court that the Defendant called his office the previous day and informed counsel that he was going to hire another

attorney and to withdraw his guilty plea. The Defendant's counsel requested time to research this issue and to determine whether the Defendant was entitled to withdraw his plea. The trial court suggested that the parties finalize the Defendant's sentence at the hearing and then, at a later date, determine whether there was a basis for a withdrawal of the plea. Based upon the presentence report and the arguments of counsel, the trial court sentenced the Defendant, stating:

> The two factors cited for enhancing [the Defendant's sentence are] [two] and [nine], [and] the Court is persuaded that both of those certainly do apply in this case. The [D]efendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, no question that's the case.
>
> Number eight, that the [D]efendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. That also is applicable.
>
> So and those appear to be the key enhancers that would be the basis for a requirement that the matters be enhanced. Each of these is a three to six year sentence, so the enhancement in this case in the [c]ourt's opinion based on the number of previous convictions and so forth should be a year and a half on each of these counts, which would make it a four and a half year sentence.
>
> Looking now at the mitigators, you know other than the possibility that there might be some application, I guess, of this conduct not threatening serious bodily injury, I mean that's stretching the situation because of the involvement of drugs and so forth, but any way, you know, I might give some consideration to that fact, there was no gun play or anything involved, other than that I can't see a mitigating factor that is listed in 40-35-113 that would . . . apply here. So I'm going to basically leave the sentences where they are. I guess if I'm going to give any recognition at all to the fact that nobody was physically immediately threatened, it would be very slight, so maybe I'll give three months . . . off on each sentence for that.
>
> The question now is whether or not the sentences should be run concurrent or consecutive. Since they are different case numbers and the time frame is significantly different I'm not sure how we would justify a concurrent sentence in this case. . . . [L]ook at the criterion on 40-35-115, which is the multiple conviction criteria for looking at it. . . . I think the convictions ought to run consecutive. I don't see how we can justify treating them as one event. He's already gotten the benefit of kind of one punishment for more than one event because in the one case there were multiple buys and part of the plea was to kind of have several of 'em go away, so I think that that's enough is enough on that, so the sentence will be run consecutive rather than concurrent.

On March 11, 2003, the trial court held a hearing on the Defendant's motion to withdraw his guilty plea. The Defendant, represented by new counsel, told the court that he only pled guilty to these crimes because he thought it was in his best interest. The Defendant testified that, at the guilty plea hearing, the State articulated the facts that it would prove if the case went to trial, and when the trial court asked the Defendant if those were the facts, he responded "not necessarily." The Defendant said that he filed a motion to withdraw his guilty plea because he did not commit these crimes, but he thought his son, who he identified by name, had committed these crimes. The Defendant said that he had a letter from his son that stated his son committed the crimes. He testified that he only pled guilty to the crimes because his attorney told him that, if he pled guilty, he would get sentenced to three or four years. He said that he entered the guilty plea only to protect his son. The Defendant testified that, had he gotten a three or four year sentence, he would not have entered a motion to withdraw his plea. The trial court read the portion of the guilty plea transcript where the trial court informed the Defendant of the possible punishment for his plea, and the Defendant said that he "misunderstood." The trial court reminded the Defendant that he was told that his sentences would likely be run consecutively, and the Defendant responded that he still did not understand.

The Defendant's counsel at the guilty plea hearing, David McGovern, testified that, prior to the Defendant's guilty plea, he went over elements of the charged offense with the Defendant and the sentence that could be imposed. He said that he also went over concurrent and consecutive sentencing with the Defendant. McGovern testified that he did not remember if the Defendant said that he understood, but he said that he would not have proceeded with the plea if the Defendant appeared confused. McGovern said he was not aware that the Defendant had a son who was going to testify that he committed these crimes, but he did not recall any specific details of the case. On cross-examination, McGovern admitted that he did not remember "much" of what had occurred and that he could not rebut what the Defendant had said. Upon questioning by the trial court, McGovern said that he would have only recommended a best interest plea if it made sense to "take that step." McGovern said that he never had a basis for thinking that the Defendant's son had committed this crime. The trial court then asked the Defendant why his son was not present to testify at the hearing that he had committed these crimes so as to meet the Defendant's burden of proof. The Defendant's attorney at the hearing on the Defendant's motion to withdrawal his guilty plea said that he had never spoken with the son.

The trial court found that the Defendant's request to file a motion to withdraw his guilty plea occurred prior to the Defendant's sentencing and that, therefore, the Defendant must only show a fair and just reason to withdraw his plea. The court read from the transcript of the guilty plea hearing and held:

> [W]ithout something . . . more than just his own statement about what he could or could not put on I'm not going to determine this against the State. I do not think his statement unsupported by any facts whatsoever other than his own statement that that is sufficient to meet the burden. I mean he is not . . . necessarily a credible witness, . . . in many ways because he's committed crimes in times past one thing or another,

and all I've got [to] rely on is his own statement that he really has another witness he could have brought in, but he doesn't bring him in today. He didn't have him then, so I'm going to deny your motion.

On July 24, 2003, the trial court held a hearing on the Defendant's motion for a new sentencing hearing or, in the alternative, a sentence reduction. The trial court reviewed his decision to order consecutive sentencing, stating:

> If you make them concurrent you would do so primarily because they were close in time, maybe part of the same criminal enterprise or something of that nature or you might do it because the defendant had no previous record and maybe it was all related to some inability on his part to, you know, comply, but this record as I recall there were a bunch of things that were retired. A bunch of counts, other events, that were retired even in the process of taking this plea, plus apparently his extensive, several page criminal history here would indicate that it's not like it's a one time offense or even a one time series of offenses. It's like, you know, they're just almost entirely separate.

After hearing arguments of counsel, the trial court denied the motion, holding "I don't see anything that causes me, I mean I hope [he] ha[s] seen the error of [his] ways and [is] going to do better in . . . [t]he future, but I can't let that be a basis for changing this sentence at this time. So . . . I'm denying your motion."

It is from these judgments of the trial court that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred in two regards. First, he asserts that the trial court improperly denied his motion to withdraw his guilty plea. Next, he contends that the trial court erred when it ordered that his two sentences run consecutively.

### A. Motion to Withdraw Guilty Plea

The withdrawal of a plea of guilty is governed by Rule 32(f) of the Tennessee Rules of Criminal Procedure. This rule states:

> A motion to withdraw a plea of guilty may be made upon a showing by the defendant of any fair and just reason only before sentence is imposed; but to correct manifest injustice, the court after sentence, but before the judgment becomes final, may set aside the judgment of conviction and permit the defendant to withdraw his plea.

The rule creates two standards for determining whether an accused should be permitted to withdraw

a plea of guilty. The proper standard to be applied by the trial court depends upon when the accused files the motion to withdraw the plea. When the motion is filed prior to the imposition of sentence, the standard to be applied is "a fair and just reason." When the motion is filed after the imposition of sentence, the standard to be applied is "manifest injustice." A defendant "is not entitled to withdraw a plea of guilty as a matter of right." State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). The burden of establishing that the plea should be withdrawn is on the defendant. Id. "The plea will not be set aside . . . merely because the defendant experiences a change of heart." State v. Davis, 823 S.W.2d 217, 220 (Tenn. Crim. App. 1991). "Whether an accused should be permitted to withdraw a plea of guilty is a question that is addressed to the sound discretion of the trial court." Id. Abuse of discretion in this context means there must be no substantial evidence to support the conclusion of the trial court. See Goosby v. State, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995) (citing State v. Williams, 851 S.W.2d 828, 830-31 (Tenn. Crim. App. 1992)).

In this case, the trial court found that the Defendant had filed his motion to withdraw his guilty plea prior to his sentencing, by oral motion at his sentencing hearing. Therefore, the more lenient "fair and just reason" standard applies. What constitutes a showing of "any fair and just reason" is not specifically set out in the Tennessee Rules of Criminal Procedure, but this Court has relied on factors determined by the Court of Appeals for the Sixth Circuit to be relevant to such an analysis. See State v. Patrick Maxwell, No. E1999-00124-CCA-R3-CD, 2000 WL 1606582, at *8 (Tenn. Crim. App., at Knoxville, Oct. 27, 2000), *no perm. app. filed*; State v. Antonio Demonte Lyons, No. 01C01-9508-CR-00263, 1997 WL 469501, at *17 (Tenn. Crim. App., at Nashville, Aug. 15, 1997), *no perm. app. filed* (citing United States v. Alexander, 948 F.2d 1002, 1003 (6th Cir. 1991)). While Tennessee courts are not bound by federal rules, "there is merit in uniformity and we may consider them for guidance." State v. Newsome, 778 S.W.2d 34, 36 (Tenn. 1989) (citations omitted).

In determining what constitutes a "fair and just reason," the Court of Appeals for the Sixth Circuit in United States v. Spencer, 836 F.2d 236, 239-40 (6th Cir. 1987), *cert. denied*, 486 U.S. 1009 (1988), stated the relevant factors as:

> 1. The length of time between the entry of the guilty plea and the filing of the motion to withdraw it;
> 2. Why the grounds for withdrawal were not presented to the court at an earlier point in the proceedings;
> 3. Whether the defendant has asserted and maintained his innocence;
> 4. The circumstances underlying the entry of the plea of guilty, the nature and background of the defendant, and whether the defendant has admitted guilt; and
> 5. Once the defendant has established a fair and just reason, whether the prosecution will be prejudiced should the plea be withdrawn.

Considering these factors in the case under submission, we conclude that the Defendant is not entitled to relief. The Defendant contends that he wanted to withdraw his guilty plea because he did not commit the crimes but that his son did. He said he had a letter from his son so stating, however,

he did not present the letter to the trial court or call his son to testify. The Defendant testified that, had he received a sentence of three or four years, he would not have filed the motion to withdraw his guilty plea. The trial court reminded the Defendant that the court specifically told the Defendant of the possible sentence that he could receive, and the Defendant said that he "misunderstood" the trial court. The trial court found that the Defendant was not a credible witness. Under these circumstances, the Defendant has failed to meet his minimum burden of presenting evidence to establish that any fair and just reason exists for granting this withdrawal of his guilty pleas. We conclude that substantial evidence existed to support the denial of the Defendant's motion to withdraw his guilty pleas and that the trial court did not abuse its discretion in so ruling.

## C. Consecutive Sentencing

The Defendant contends that the trial court erred when it ordered that his two sentences run consecutively. When a defendant challenges the length or manner of service of a sentence, it is the duty of this Court to conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "'conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001) (quoting State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999)); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or statutory enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Cmts.

In the case under submission, we conclude that there is ample evidence that the trial court considered the sentencing principles and all relevant facts and circumstances. Therefore, we review its decision de novo with a presumption of correctness. Accordingly, so long as the trial court complied with the purposes and procedures of the 1989 Sentencing Act and its findings are supported by the factual record, this Court may not disturb this sentence even if we would have preferred a different result. See Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Cmts; State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). We note that the defendant bears the burden of showing that the sentence is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; Ashby, 823 S.W.2d at 169.

In calculating the sentence for a Class C felony conviction, the presumptive sentence is the statutory minimum for a Range I offender if there are no enhancement or mitigating factors. See Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Tenn. Code Ann. § 40-35-210(e). The sentence ranges for a Range I offender for a class C felony is not less than three (3) nor more than six (6) years. Tenn. Code Ann. § 40-35-112 (2003).

The United States Supreme Court's recent opinion in Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004), calls into question the continuing validity of our current sentencing scheme. In that case, the Court, applying the rule in Apprendi v. New Jersey, 566 U.S. 466, 490 (2000), struck down a provision of the Washington sentencing guidelines that permitted a trial judge to impose an "exceptional sentence" upon the finding of certain statutorily enumerated enhancement factors. 124 S. Ct. at 2537. The Court observed that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" 124 S. Ct. at 2537. Finally, the Court concluded that "every defendant has a *right* to insist that the prosecutor prove to a jury [beyond a reasonable doubt] all facts legally essential to the punishment." Id. at 2539.

In the case under submission, the trial court enhanced the Defendant's sentenced based upon two enhancement factors enumerated in Tennessee Code Annotated section 40-35-114: (2) the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; and (9) the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. Under the rule established in Blakely, the Defendant's prior convictions may be used to enhance the sentences. The trial court, in this instance, gave weight to two prior convictions for sale of cocaine and the multiple misdemeanor convictions. Factor number (9) was not based upon the Defendant's prior convictions, and it was not admitted by the Defendant. In consequence, the holding in Blakely would preclude its application. The Defendant's sentence, however, of four years and three months, enhanced by one year and three months from the presumptive minimum, is adequately supported by enhancement factor number (2), which was based on his two prior felony convictions for the sale of cocaine and his multiple misdemeanor convictions.

We now turn to the Defendant's contention that the trial court erred by ordering his sentences to run consecutively. The Defendant asserts that the trial court based his consecutive sentences on primarily two factors, first that these were two separate incidents separated by time and second that the State dismissed other charges pending against the Defendant. The Defendant contends that neither of these factors is listed in the statute governing consecutive sentencing. The State counters that the Defendant's sentence was ordered to run consecutively based upon the Defendant's extensive criminal history. Pursuant to Tennessee Code Annotated section 40-35-115(a) (2003), if

a defendant is convicted of more than one criminal offense, the court shall order the sentences to run either consecutively or concurrently. The trial court may order sentences to run consecutively if the court finds by a preponderance of the evidence that one or more of the seven criteria enumerated in Tennessee Code Annotated section 40-35-115(b) apply. If none of the criteria in subsection (b) apply, the "[s]entences shall be ordered to run concurrently . . . ." Tenn. Code Ann. § 40-35-115(d). One criterion listed in Tennessee Code Annotated section 40-35-115(b) is that the "defendant is an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2).

In the case under submission, the Defendant's presentence report, which the trial court considered at sentencing, shows that the Defendant was convicted for seventeen felony and misdemeanor convictions between 1986 and 2001. When the trial court reviewed its decision to order that the Defendant's sentences run consecutively, it noted the Defendant's "extensive, several page criminal history." The trial court also considered the charges dismissed against the Defendant as evidence of his extensive record of criminal activity. While the trial court also mentioned that these were separate events, a factor not enumerated by statute, the trial court did not abuse its discretion by ordering that the Defendant's convictions run consecutively. This issue is without merit.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the Defendant's convictions and sentence. The judgments of the trial court are affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE